96 F.3d 853
 Larry A. MARTIN, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
Victor FERNANDEZ, also known as Marce, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
Thaddeus WILLIAMS, Plaintiff-Appellant,
v.
Douglas HIGGINS, et al., Defendants-Appellees.
Joseph E. TAYLOR, Petitioner-Appellant,
v.
Craig A. HANKS, Respondent-Appellee.
In re Adam R. HOUSER, Petitioner.
 Nos. 96-2011, 96-2267, 96-2541, 96-2568 and 96-8027.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Aug. 24, 1996.
Decided Sept. 4, 1996.
 
 Larry A. Martin (submitted), pro se.
 Barry Rand Elden, Chief of Appeals, Office of the United States Attorney, Criminal Appellate Division, Chicago, IL for Respondent-Appellee in Nos. 96-2011, 96-2267.
 Victor Fernandez (submitted), pro se.
 Thaddeus Williams (submitted), pro se.
 Rita M. Novak, Office of the Attorney General, Chicago, IL, for Defendants-Appellees.
 Joseph E. Taylor (submitted), pro se.
 Pamela Carter, Office of the Attorney General, Indianapolis, IN, for Respondent-Appellee in No. 96-2568.
 Adam R. Houser (submitted), pro se.
 Gerald A. Coraz, Office of the United States Attorney, Indianapolis, IN, for Respondent.
 Before POSNER, Chief Judge, and BAUER and EASTERBROOK, Circuit Judges.
 POSNER, Chief Judge.
 
 
 1
 We have consolidated for consideration and decision five cases presenting four questions of interpretation under the Prison Litigation Reform Act of 1996, Pub.L. 104-134, Title VIII, 110 Stat. 1321, and the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214, both enacted this past April.
 
 
 2
 1. The first question (presented by No. 96-8027) is whether a petition for mandamus is within the scope of the Prison Litigation Reform Act, which imposes new requirements on prison inmates desiring to sue in federal court. We do not think that the question can be answered in gross. When as is normally the case in the federal courts mandamus is being sought against the judge presiding in the petitioner's case, it is realistically a form of interlocutory appeal, and whether an interlocutory appeal is within the scope of the new Act should turn on whether the litigation in which it is being filed is within that scope. It is if it is civil litigation, and the petition for mandamus filed in such a litigation must therefore comply with the Act. In re Nagy, 89 F.3d 115, 116-17 (2d Cir.1996); Green v. Nottingham, 90 F.3d 415, 417-18 (10th Cir.1996). It is not if it is criminal litigation; in such a case the petition for mandamus need not comply. In re Nagy, supra, 89 F.3d at 117.
 
 
 3
 A petition for mandamus in a criminal proceeding is not a form of prisoner litigation. The defendant filing the writ might not even be a prisoner; he might be out on bail. It is not a "civil action," the operative language of the new 28 U.S.C. § 1915(b)(1). It is a procedural step in the criminal litigation, like an interlocutory or final appeal or a civil contempt proceeding against a witness. The section we just quoted does speak of "a civil action or ... an appeal," but in context it is apparent that the word "appeal" means the appeal in a civil action. A different conclusion would create the anomaly that a prisoner who had brought three or more groundless civil suits while incarcerated could not seek mandamus in a criminal action against him without prepaying the docket fee, 28 U.S.C. § 1915(g)--not something that Congress is likely to have intended in seeking to lessen the flow of groundless prisoner civil rights litigation. Cf. Green v. Nottingham, supra, 90 F.3d at 418.
 
 
 4
 2. The next question (presented by No. 96-2011), and the most difficult, is whether Fed. R.App. P. 4(c) affects the applicability of the provision of the Antiterrorism and Effective Death Penalty Act that requires a prisoner wanting to appeal from a denial of federal habeas corpus (or from a denial of parallel relief under 28 U.S.C. § 2255) to obtain a certificate of appealability. Under Rule 4(c), which codifies Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), a prisoner's notice of appeal is timely if by the deadline for filing the appeal the notice was handed to prison officials for mailing, even though the notice was not received by the district court until after the deadline expired. We must decide whether, if the notice of appeal was handed to the prison officials before the date of enactment of the antiterrorism statute, but was not received by the district court until after that date, the prisoner must obtain a certificate of appealability. The answer depends on whether the appeal is deemed filed when the prisoner hands the notice of appeal to the prison officials for filing, or is merely not untimely if the notice was handed to them by the deadline. If the former, then an appeal would be deemed to have been filed before the effective date of the new statute if the notice of appeal had been handed to them before, even though the notice was not sent until after that date. A certificate of appealability is not required for an appeal perfected before the effective date of the new statute. The requirement, though procedural, would attach a new legal consequence to a completed act and is therefore not to be imposed retroactively in the absence of a clear statement of congressional intent to do so. Landgraf v. USI Film Products, 511 U.S. 244, ----, ---- n. 29, 114 S.Ct. 1483, 1499, 1502 n. 29, 128 L.Ed.2d 229 (1994); Reyes-Hernandez v. INS, 89 F.3d 490, 492 (7th Cir.1996).
 
 
 5
 All previous applications of Rule 4(c) have been in situations in which it was used to save an appeal from being dismissed as untimely. And it seems unlikely that the Congress that enacted the Antiterrorism and Effective Death Penalty Act would have wanted the rule used not to save an appeal but merely to give the appellant the benefit of a more favorable procedure, the procedure for taking appeals that existed before the enactment of the Act. Congress did not, however, alter Rule 4(c), which begins: "In a civil case in which the first notice of appeal is filed in the manner provided in this subdivision (c)." The manner provided is the handing of the notice to the prison officials for filing. The language we have quoted describes this handing as the filing of the notice of appeal. And this means that the appellant appealed before the effective date of the new Act and therefore is not required to obtain a certificate of appealability.
 
 
 6
 3. The next question we take up, and the easiest, is whether the Prison Litigation Reform Act applies to habeas corpus proceedings (No. 96-2568) and section 2255 proceedings (the federal prisoner's habeas corpus surrogate) (No. 96-2267). Both are technically civil proceedings and so come within the literal scope of the Act. But since the simultaneously enacted antiterrorism act deals comprehensively with habeas corpus, since habeas corpus is more accurately regarded as being sui generis (it has its own procedural rules, for example, and when invoked by a prisoner almost its sole office is to upend a criminal judgment) than as being either civil or criminal, and since postconviction relief and prisoner civil rights relief are analytically very different and the Prison Litigation Reform Act is addressed to the latter, we agree with the Second Circuit's conclusion that the Act is inapplicable to habeas corpus. Reyes v. Keane, 90 F.3d 676 (2d Cir.1996). By virtue of the new 28 U.S.C. § 1915(g), the application of the Prison Litigation Reform Act to habeas corpus would block access to any prisoner who had filed three groundless civil suits and was unable to pay the full appellate filing fee (compared to the $5 fee for an application for habeas corpus). This result would be contrary to a long tradition of ready access of prisoners to federal habeas corpus, as distinct from their access to tort remedies (a distinction emphasized in Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)). And by drastically curtailing the filing of second or successive applications of habeas corpus, the antiterrorism law addressed in the context of habeas corpus the same concern with groundless litigation that informs the Prison Litigation Reform Act and tailored its response to that context.
 
 
 7
 4. The last question (presented by No. 96-2541) is whether this court should insist upon the payment of the initial partial fee required by the Prison Litigation Reform Act for the filing of an appeal by a prisoner in a civil action covered by the Act before we reach the merits even of a frivolous case. We agree with the Second Circuit that the answer is "yes." Leonard v. Lacy, 88 F.3d 181 (2d Cir.1996). To reach the merits of frivolous appeals without insisting on the initial payment would produce the paradox that frivolous appellants would get a decision on the merits without charge while appellants who had colorable but losing cases would get (the same) decision on the merits only after paying (assuming they have a means of paying, 28 U.S.C. § 1915(b)(4)). Congress wanted to relieve the pressures on the federal courts of frivolous suits by prison inmates and we can best achieve that purpose by insisting on payment in advance in every case in which that is feasible. To be content with trying to collect the fee after dismissing the suit as frivolous would be an inferior alternative, since by that time the prisoner will often not be able to pay even if he had the means to pay when he filed the appeal. His commissary account may be depleted and he may be on the verge of release, so that the account will not be replenished, or he may have accrued other charges against the account--perhaps stemming from other suits that he has brought.
 
 
 8
 In light of our analysis, we decline to dismiss the petition for mandamus in No. 96-8027 or the appeals in Nos. 96-2568 and 96-2267. And the appellant in No. 96-2011 need not obtain a certificate of appealability in order to maintain his appeal. The appellant in No. 96-2541, however, must pay the appellate filing fee before we will consider the merits of the appeal.
 
 
 9
 SO ORDERED.