**In re Peter C. SMITH, Petitioner.**

**No. 96–5327.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 15, 1997.

Decided June 13, 1997.

---

Evelina J. Norwinski, Assistant Federal Public Defender, Washington, DC, appointed by the court as amicus curiae, argued the cause on the side of petitioner, with whom A.J. Kramer, Federal Public Defender, was on the brief. Peter C. Smith, appearing pro se, also filed briefs.

William D. Weinreb, Assistant U.S. Attorney, Washington, DC, argued the cause for respondent, with whom Eric H. Holder, Jr., U.S. Attorney, John R. Fisher and Roy W. McLeese, III, Assistant U.S. Attorneys, were on the brief.

Before RANDOLPH and ROGERS, Circuit Judges and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

In 1996, Congress passed the Prison Litigation Reform Act ("PLRA") as Title VIII of the Omnibus Consolidated Recessions and Appropriations Act of 1996, Pub.L. 104–134, 110 Stat. 1321 (1996).[1] On Novem-

---

**1.** The PLRA applies to filings on or after April 26, 1996, the date the President signed the legislation. *See Wright v. Morris,* 111 F.3d 414, 417 (6th Cir.1997).

ber 21, 1996, shortly before his release from prison, petitioner Peter C. Smith lodged with this court a pleading styled as a petition for a writ of prohibition, naming as respondent the United States Department of Justice, but also seeking relief from the United States Parole Commission. In his petition Smith contends that the Commission's files erroneously fail to reflect that the Commission ceased to have authority over him on November 1, 1992; the Commission's calculation of his parole date violated § 235(b) of the Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat.1987, 2032 (1984)(codified as amended at 18 U.S.C. § 3551 (1985 & Supp. 1996)); the Federal Bureau of Prisons ignored its rules in calculating the length of his sentence; the search of his residence violated his Fourth Amendment rights; and his trial attorney was constitutionally ineffective. Citing the Privacy Act of 1974, 5 U.S.C. § 552a (1996), Smith seeks an order directing the Commission to correct his parole files, as well as an order awarding him compensatory and punitive damages. The petition was duly filed by the Clerk of the Court. Smith also filed a motion to proceed in forma pauperis.

█ The court *sua sponte* deferred ruling on Smith's motion for leave to proceed in forma pauperis and appointed the Federal Public Defender as amicus curiae to present arguments in Smith's favor. The court ordered the parties to address three issues: first, whether the filing fee provisions of the PLRA apply to habeas corpus proceedings; second, the impact, if any, of Smith's release from prison on the applicability of the PLRA's filing fee requirements; and third, whether the petition is moot as a result of Smith's release from prison. We hold that the PLRA is applicable to Smith's petition, that his release from prison does not relieve him of past due obligations under the PLRA, and that although his request for habeas corpus relief is moot as a result of his release

from prison, his claims for correction of Commission records, a declaration that as of November 1, 1992, he was no longer subject to Commission supervision, and for damages are not moot. Therefore, because Smith's petition may not properly be filed until his PLRA obligations are met, we defer any decision regarding his petition and motion until he complies with the PLRA filing fee requirements. *See Martin v. United States,* 96 F.3d 853, 856 (7th Cir.1996). We will only address the first two issues because the answer to the third is too obvious to warrant discussion.

## I.

█ Until 1996, the in forma pauperis statute, 28 U.S.C. § 1915(a), provided that any person without means could commence "any suit, action, or proceeding, civil or criminal," without prepaying the requisite filing fees. In enacting the PLRA in 1996, Congress "endeavor[ed] to reduce frivolous prisoner litigation by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees." *Leonard v. Lacy,* 88 F.3d 181, 185 (2d Cir.1996); *see also Naddi v. Hill,* 106 F.3d 275, 277 (9th Cir.1997); *United States v. Cole,* 101 F.3d 1076, 1077 (5th Cir.1996); *Martin v. United States,* 96 F.3d 853, 856 (7th Cir.1996). Thus, "Congress enacted the PLRA primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act, most of which concern prison conditions and many of which are routinely dismissed as legally frivolous." *Santana v. United States,* 98 F.3d 752, 755 (3d Cir.1996) (citing legislative history); *see also Reyes v. Keane,* 90 F.3d 676, 678 (2d Cir.1996).

Section 804 of the PLRA amends the in forma pauperis statute to provide that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1).[2] Section 804

---

**2.** Section § 1915(b)(1) provides:

The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal.

also establishes a prepayment scheme, including an initial payment of a portion of the funds available in a prisoner's account and subsequent installments based on fixed percentages of the amount in the prisoner's account when the full fee is not initially paid. *Id.* § 1915(b)(2).[3] Section 1915(b)(4) provides, however, that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." Thus, subject to § 1915(b)(4), prepayment of the filing fee is required in every case in which a prisoner proceeding in forma pauperis brings a "civil action."

■ Although Congress did not define the term "civil action" for purposes of the PLRA, we conclude that it includes a petition for a writ of prohibition that, like Smith's, includes underlying claims that are civil in nature. While Smith and amicus contend that Smith's petition should be treated identically to a habeas corpus petition, we find no basis to conclude that because certain claims in his petition arise out of criminal proceedings he may evade the PLRA requirements applicable to his civil claims. The circuits addressing the applicability of the PLRA filing fee requirements to habeas corpus petitions have uniformly concluded that Congress did not intend the prepayment obligations to apply to habeas corpus filings. Two days after enacting the PLRA, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1997), which imposed comprehensive measures for deterring frivolous habeas petitions. As the Seventh Circuit explained in *Martin*:

since the simultaneously enacted antiterrorism act deals comprehensively with habeas corpus, since habeas corpus is more accurately regarded as being sui generis ... than as being either civil or criminal, and since postconviction relief and prisoner civil rights relief are analytically very different and the [PLRA] is addressed to the latter, we agree ... that the Act is inapplicable to habeas corpus.

96 F.3d at 855. Every other circuit that has addressed the question whether the PLRA applies to petitions for habeas corpus has concluded that it does not, essentially for the same reasons articulated in *Martin*. See *Naddi*, 106 F.3d at 277; *Cole*, 101 F.3d at 1077; *Santana*, 98 F.3d at 754; *Reyes*, 90 F.3d at 678.

■ By contrast, three circuits have held that petitions for mandamus or prohibition that are predicated on underlying civil claims fall within the range of actions that Congress sought to subject to the PLRA filing fee requirements. See *Madden v. Myers*, 102 F.3d 74, 77 (3d Cir.1996); *Martin*, 96 F.3d at 854–55; *Green v. Nottingham*, 90 F.3d 415, 418 (10th Cir.1996); *In re Nagy*, 89 F.3d 115, 116 (2d Cir.1996). The rationale of these decisions is that it would defeat the purpose of the PLRA if a prisoner could evade its requirements simply by dressing up an ordinary civil action as a petition for mandamus or prohibition or by joining it with a petition for habeas corpus. See *Green*, 90 F.3d at 418. We agree. Therefore, we hold that because Smith's petition includes compensatory and punitive damage claims under the Privacy Act, 5 U.S.C. § 552a, that are civil in nature, and was filed after the effective date of the PLRA while he was still in prison, the fee requirements of the PLRA apply.[4] See *Reyes*, 90 F.3d at 678.

3. Section 1915(b)(2) provides:
 After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

4. Several months after filing his petition in this court, Smith moved to strike his request for

damages. We deny the motion. Although Smith submitted his "notice of [withdrawal] of claim for damages" four days before the government submitted its brief, the motion was received by the court the same day that the government's brief was filed. Because the government based many of its PLRA contentions on the existence of Smith's damages claim, it would prejudice the government to permit withdrawal of that claim after the government's brief was filed. See *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir.1996); *Conafay v. Wyeth Laboratories*, 841 F.2d 417, 419 (D.C.Cir.1988) (per cu-

## II.

■ The question remains how the PLRA's procedures for the the payment of filing fees apply in the case of a prisoner who is released before the filing and docket fees have been fully paid.

■ Accompanying his petition for leave to proceed in forma pauperis was an affidavit in which Smith stated that he had no income or assets, earned $6.00 per month in prison wages, had received "[g]ifts in varying amounts of under $100.00," and had less than $1.00 in savings as of May 15, 1996.[5] That Smith currently lacks the means to pay the applicable filing fee does not, however, relieve him of his obligation to comply with past due procedural and payment obligations under the PLRA. If a litigant is a prisoner on the day he files a civil action, the PLRA applies. *See Robbins v. Switzer*, 104 F.3d 895, 897 (7th Cir.1997); *McGann v. Commissioner, Social Sec. Admin.*, 96 F.3d 28, 29–30 (2d Cir.1996). Although Smith's obligation to pay the filing fee arose at the time he sought to file his petition with this court, 28 U.S.C. § 1915(a)(1), (b); *see McGann*, 96 F.3d at 29–30, the record does not indicate that he submitted the prison account statements required by § 1915(a)(2),[6] paid the initial partial filing fee required by § 1915(b)(1), or made any of the monthly payments required by § 1915(b)(2). Under the PLRA, failure to comply with any of these requirements may result in dismissal of a prisoner's action. *See Ayo v. Bathey*, 106 F.3d 98, 101 (5th Cir. 1997).

■ Smith and amicus contend that because the PLRA applies exclusively to prisoners, although Smith failed to submit the required forms or to make the required payments while he was in prison, now that he has been released these obligations are no longer binding upon him. We find nothing to indicate that Congress intended to create a loophole through which prisoners could evade their PLRA fee obligations while in prison and be permanently relieved of these duties upon their release. Because Smith was a prisoner when he filed his petition, he is obligated to fulfil the applicable PLRA procedural requirements and pay the amounts due under the statute, notwithstanding the fact of his release. As the Seventh Circuit pointed out in *Robbins*, relying on the plain language of § 1915(b)(1), an individual's "current status does not alter the fact that he was a prisoner when he filed the appeals." 104 F.3d at 897. This follows from recognition that in forma pauperis status defers, but does not permanently excuse, the payment of filing fees. As the Seventh Circuit concluded in *Robbins*, "[s]ection 1915(b)(1) says that prisoners are liable for the full fees, but so is every other person who proceeds in forma pauperis; all § 1915(a) does for any litigant is excuse the pre-payment of fees. Unsuccessful litigants are liable for fees and costs and must pay when they are able." *Id.* at 898. To require Smith to pay amounts that, according to the PLRA formula, he was capable of paying at the time they were assessed is thus not inconsistent with extending in forma pauperis status to him. Because they arose while he was in prison and subject to the PLRA, Smith's past due, unmet obli-

---

riam). The only basis Smith provides for withdrawing his damages claim is his desire to re-file that claim in another forum. To allow such relief at this late date would be contrary to the purposes of the PLRA and congressional intent. *See Martin*, 96 F.3d at 856; *Reyes*, 90 F.3d at 678.

5. Based on the standard in § 1915(a)(1), Smith would appear to qualify for in forma pauperis status. Section 1915(a)(1) provides, in pertinent part:

Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit

that includes a statement of all assets such prisoner possesses that the person in unable to pay such fees or give security therefor.

6. Section 1915(a)(2) provides, in relevant part:

A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6–month period immediately preceding the filing of the complaint or notice of appeal, obtained form the appropriate official of each prison at which the prisoner is or was confined.

gations cannot be excused as a result of his release from prison. *Id.* at 897–88. *But see McGann,* 96 F.3d at 30.

 Nor, as Smith and amicus contend, does § 1915(b)(4) compel a contrary result. While this provision excuses prepayment of the filing fee for prisoners who lack assets or means to pay at the time an action is filed, it does not excuse such prisoners from compliance with the PLRA's procedural requirements, or from the obligation to make installment payments using any funds that come into their prison accounts subsequent to filing. Nothing in § 1915(b)(4) overrides the court's obligation to "assess and, when funds exist, collect," § 1915(b)(1), applicable fees from petitioners who, though lacking assets at the time of filing, subsequently gain means, either in their prison account or after release. Section 1915(b)(4) does not authorize prisoners to evade the statute by withholding required payments, and win permanent reprieve from their obligations by pleading poverty upon release. *See Robbins,* 104 F.3d at 897–99. Instead, "when a prisoner does not adhere to the statutory system, a court may dismiss the appeal without regard to his [present] ability (or inability) to pay." *Id.* at 897.

 Because this circuit has not previously addressed the applicability of the PLRA to civil pleadings where the petitioner is no longer in prison, and because Smith filed his petition directly in this court rather than the district court, it is appropriate to afford Smith time to comply with the filing requirements of the PLRA. *See id.* at 898–99. Therefore, before the court will consider his petition, Smith must demonstrate that he did not have money in his prison account to pay the PLRA fee at the time he filed his petition. Within thirty days of entry of the mandate of this decision, *see* FED. R.APP. P. 41(a), Smith shall file a statement or an affidavit, as provided by Form 4 in the Appendix to the Federal Rules of Appellate Procedure, showing the balances in his prison account as of November 21, 1996, the date he filed his petition, as well as his income for six months prior to that date, and for the time between that date and December 17, 1996, when he was released from prison. If Smith had the financial means to pay any part of the PLRA fees, he must pay such amounts that, according to the prison account statements, he could have paid when he filed his petition in this court, and in subsequent installments. If Smith demonstrates that, from the time he filed his petition onward, he had no money in his prison account to pay the filing fees, the court will proceed to address his petition and he may proceed in forma pauperis. *See* 28 U.S.C. § 1915(b)(4); *Robbins,* 104 F.3d at 897; *Martin,* 96 F.3d at 856. If he does not file the requisite materials with the court and pay any amounts due, his petition may be dismissed. *See Robbins,* 104 F.3d at 899.

At such time as Smith submits the required prison account statements within thirty days, his liability for the PLRA fees that should have been paid prior to his release from prison under § 1915(b) will be calculated, and Smith must pay that amount as provided by further order of the court. *Id.* However, Smith may rely on in forma pauperis status for the balance of the filing fee, *id.,* as his current poverty does not pose a bar to relief, except with respect to past due amounts under the PLRA that were assessed based upon a calculation that Smith had means to pay them when due.

*So ordered.*