**William C. LONGBEHN, Petitioner,**

v.

**Janet RENO, on behalf of the UNITED STATES of America, Respondent.**

**No. 98–C–0476–C.**

United States District Court,
W.D. Wisconsin.

Oct. 2, 1998.

William C. Longbehn, Oxford WI, for Petitioner.

Peggy A. Lautenschlager, United States Attorney, Madison WI, for Respondent.

## ORDER

CRABB, District Judge.

Petitioner has filed a notice of appeal from this court's judgment dated August 5, 1998, dismissing his § 2241 petition for lack of jurisdiction. He requests leave to appeal *in forma pauperis.*

The first question to be resolved is what standard this court is to apply in determining whether petitioner may proceed *in forma pauperis* on appeal. Wrestling with this question has illuminated the complexities of applying the Prison Litigation Reform Act of 1996, Pub.L. 104–134, Title VIII, 110 Stat. 1321, to some but not all § 2241 habeas corpus proceedings.

In two cases, the Court of Appeals for the Seventh Circuit has described the type of § 2241 petitions it wants the district courts to treat as "civil actions" subject to the PLRA. In *Thurman v. Gramley,* 97 F.3d 185, 187 (7th Cir.1996), the court of appeals held that "proper" § 2241 habeas corpus petitions, such as "actions concerning conditions of confinement, a deprivation of good time credits, or other matters that occur at the prison" should be treated as "civil actions" under the PLRA and that § 2241 petitions that should be labeled as § 2255 motions should not, because the latter are "functionally a stage in the criminal proceeding." Later, in *Newlin v. Helman,* 123 F.3d 429, 438 (7th Cir.1997), the Court of Appeals held that § 2241 "complaints about denial of parole, revocation of parole, and the like" are also subject to the Act.

In this case, when petitioner filed his petition in this court and requested leave to proceed *in forma pauperis,* I read the petition as a challenge to a decision of the Parole

Commission refusing to consider petitioner eligible for parole. Because it appeared that the petition concerned a matter *Newlin* suggests is subject to the PLRA (complaints about denial of parole), I concluded that petitioner's § 2241 petition was a "civil action" subject to the PLRA. In an order dated July 13, 1998, I advised petitioner that before the court would consider the merits of the claims raised in his petition, it would be necessary for him to pay the $5 fee for filing his petition. This is because application of the formula applicable to prisoners proceeding under the PLRA and described in 28 U.S.C. § 1915(b)(1) for determining petitioner's initial partial payment resulted in a finding that 20% of the greater of the average monthly deposits made to his prison account and the average balance maintained in his account far exceeded $5. Petitioner paid the fee on July 17, 1998.

On August 4, 1998, I analyzed petitioner's claim in depth in an effort to decide whether to issue an order to show cause. This analysis revealed that petitioner was in fact challenging the validity of a portion of the sentence imposed upon him by a Minnesota federal court, which was a challenge that could be raised only in a § 2255 motion in the Minnesota court. Hence, under *Thurman*, petitioner's action is not a civil action subject to the Prison Litigation Reform Act.

■ Whether a § 2241 action falls inside or outside the PLRA matters for just one reason.[1] If the action falls within the Act, the filing fee payment provisions of 28 U.S.C. § 1915(a)(2) and (b) apply. In particular, if the prisoner has monthly deposits or a monthly balance in his or her prison account over the six-month period immediately preceding the filing of his petition or appeal, the prisoner will be required to make an initial partial payment of the $5 fee for filing his petition or the $105 fee for filing an appeal and prison authorities may collect the remainder of the fee from the inmate's prison account in monthly installments according to a formula established in § 1915(b)(2). If the petition falls outside the Act, the district

court makes an indigency determination using the indigency standard it has established for cases not covered by the PLRA and, if the petitioner is eligible to proceed without prepaying some or all of the fee, the amount of fee for which prepayment is waived is not subject to the formal collection procedure established in § 1915(b)(2). *See, e.g., McIntosh v. U.S. Parole Commission,* 115 F.3d 809, 812 (10th Cir.1997) (holding that all § 2241 proceedings and appeals of those proceedings are not "civil actions" for the purpose of 28 U.S.C. § 1915(a)(2) and (b)).

In this case, I mistakenly treated petitioner's action as subject to the PLRA. Applying the Act's provisions, I found that the average monthly deposits made to petitioner's prison account exceeded the average monthly balance in his account and that 20% of the average monthly deposits exceeded the $5 filing fee. Therefore, he was required to pay the full fee.

Now that it has become clear that petitioner's case is not a case governed by the PLRA, the question is whether it is necessary to re-analyze petitioner's eligibility to proceed *in forma pauperis* with respect to his petition, this time applying this court's own indigency standard in place of the formula applicable to inmates subject to the PLRA.

■ I conclude that this step would be required if the district court's standard for determining indigency is substantially different from the standard employed to determine pauper status under the PLRA. For the reasons that follow, I intend to adopt a standard for determining eligibility to proceed *in forma pauperis* for § 2241 petitioners who are not subject to the PLRA that parallels the process for determining indigency when the prisoner is subject to the PLRA.

Before the enactment of the PLRA, each federal court used its own discretion to draw the lines governing how poor litigants had to be to qualify for *in forma pauperis* relief. *See* Robert S. Catz & Thad M. Guyer, *Federal In Forma Pauperis Litigation: In Search*

---

1. Neither the three strike provision nor the screening provisions apply, because § 2241 habeas corpus petitions are not subject to dismissal on the grounds specified in § 1915A and their dismissal does not require a strike under § 1915(g).

*of Judicial Standards,* 31 Rutgers L.Rev. 655 (1978). This was because § 1915 lacked specific standards and procedures to guide federal courts in evaluating *in forma pauperis* requests. Responding to the need to set a standard of its own, this court devised a simple formula: any prisoner who had less than $200 in his prison account and no substantial assets could proceed *in forma pauperis* under § 1915. This standard does not take into account whether the inmate is receiving and spending discretionary money on a regular basis and it does not adjust to a lesser cap when the fee to be paid is only $5 rather than $150.

When Congress amended § 1915 as part of the Prison Litigation Reform Act, it articulated criteria to be applied to prisoners seeking pauper status in civil cases. No doubt recognizing the meager income earned by prisoners fortunate enough to have a job, this criteria expresses Congress's view that prisoners bringing civil actions and filing appeals need not relinquish to the court at any one time more than 20% of the greater of the average monthly deposits made to the prisoner's inmate account or the average monthly balance maintained in the account for the six-month period immediately preceding the filing of the lawsuit or appeal. This formula for calculating how much an inmate can afford to pay from a six-month trust fund account statement results in a sliding scale formula for determining indigency that is easily applied in any prisoner case, even if the case is not one covered by the PLRA. If the inmate's monthly income or monthly balance is sizable enough that the inmate can afford to pay the full filing fee from 20% of the greater of those two amounts, he will not qualify for *in forma pauperis* status. If the calculation reveals that the inmate is able to pay a portion of the fee, he will be required to pay that portion and will qualify for pauper status as to the remainder of the fee.

There are at least two good reasons for adopting § 1915's formula for determining an inmate's indigency in all types of § 2241 actions, whether or not the action is governed by the PLRA. First, as this case bears out, it is not always a simple matter to assess at the outset whether a § 2241 action involves an issue that will fall within the category of petitions exempt from the PLRA. In some instances, the issues will not be clearly defined until after the parties have submitted briefs or additional factual information. If the district court's discretionary indigency standard is compatible with the standard Congress has established in § 1915, it will not be necessary to revisit the question whether an inmate is indigent for the purpose of paying a filing fee when, as here, it is later discovered that the action is not one subject to the PLRA.

Second, the sliding scale formula set out in § 1915 is a fair one, and a sometimes more generous standard for determining indigency than the standard this court established prior to enactment of the PLRA. For example, under this court's existing standard, a thrifty inmate having $200 or more in his account when he applies for indigent status to take an appeal would be found unqualified for indigent status. Instead, he will be required to pay all of the $105 fee, even if $105 amounts to 100% of his average monthly income or balance. On the flip side, an inmate who pays attention to where this district court's line is drawn is easily able to avoid paying any part of the fee simply by spending his money as fast as he earns it.

Moreover, it would not be contrary to the principles guiding *Thurman* for this court to adopt the formula set out in § 1915(b)(1) as the indigency standard this court will apply to all § 2241 cases, even those not covered by the PLRA. In *Thurman,* the court of appeals stated that the reasons it was holding that § 2241 petitions raising issues cognizable only in a § 2255 motion are exempt from the PLRA are the same reasons it relied on in *Martin v. United States,* 96 F.3d 853 (7th Cir.1996), in which it held that petitions under § 2254 and 2255 are not "civil actions" subject to the PLRA. In a nutshell, those reasons are: 1) in enacting the PLRA, Congress intended to lessen the flow of groundless prisoner civil rights litigation, not actions challenging the validity of the prisoner's conviction or sentence, for which adequate protection against abuse exists under the Antiterrorism and Effective Death Penalty Act of 1996; and 2) application of the PLRA's three

strike provision to habeas corpus petitions is contrary to a "long tradition of ready access of prisoners to federal habeas corpus, as distinct from their access to tort remedies." *Martin v. United States*, 96 F.3d at 855–856. Neither of these reasons is undermined by implementation of an indigency standard for all § 2241 actions that parallels the procedure established in § 1915(b)(1).

Therefore, in determining the indigency status of any prisoner filing a § 2241 habeas corpus action or appeal, I will calculate the amount an inmate must pay by apply the sliding scale formula set out in § 1915(b)(1). Using that formula, petitioner in this case was able to pay the full $5 fee from 20% of his average income over the six-month period immediately preceding the filing of his petition. He was not eligible to proceed as a pauper under § 1915, and no refund of his $5 filing fee is required.

■ Because petitioner was not granted leave to proceed *in forma pauperis* with respect to his underlying petition, he may proceed on appeal *in forma pauperis* only if I do not certify that his appeal is not taken in good faith, 28 U.S.C. § 1915(a)(3), and if I find that he is financially qualified for indigent status with respect to all or a part of the $105 fee for filing his appeal.

I do not intend to certify that petitioner's appeal is not taken in good faith. Although petitioner did not articulate the basis for his appeal, I assume that he is challenging this court's determination that the subject matter raised in his § 2241 petition may be challenged only in a motion pursuant to 28 U.S.C. § 2255 in the court that sentenced him. It is possible that on appeal, the court of appeals will interpret petitioner's petition as raising an issue amenable to resolution in a § 2241 action. Because the nature of petitioner's petition is reasonably subject to different interpretations, I cannot infer bad faith on the part of petitioner in filing his appeal.

■ Furthermore, I conclude that petitioner is financially qualified for pauper status with respect to part of the $105 fee for filing his appeal. The six-month-trust fund account statement petitioner submitted with his request for leave to proceed *in forma pauperis* on appeal reveals that he has an average monthly income of $226.91, which amount is greater than the average monthly balance in his account from mid-March to mid-September 1998. He can afford to pay $45.38 of the $105 fee for filing his appeal. Payment of this amount is to be made no later than October 23, 1998 by check or money order made payable to the clerk of court. If, by October 23, 1998, petitioner fails to pay this portion of his filing fee or show cause why he is unable to do so, the court of appeals will be free to dismiss his appeal for failure to prosecute.

### ORDER

IT IS ORDERED that no later than October 23, 1998, petitioner is to submit a check or money order made payable to the clerk of court in the amount of $45.38, and is granted leave to proceed *in forma pauperis* with respect to the remainder of the fee.

Further, I do not intend to certify that petitioner's appeal is not taken in good faith.