In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-1155

JOHN E. TEAGUE,

*Plaintiff-Appellant,*

*v.*

EDWARD MAYO, Sergeant, and ANDRE TAYLOR, Officer,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 00 C 731—**David R. Herndon,** *Chief Judge.*

ARGUED NOVEMBER 3, 2008—DECIDED JANUARY 27, 2009

Before KANNE, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* Seventy-two-year-old John Teague is serving a 75-year sentence in the Illinois prison system. The length of the sentence is a result, tragically enough, of his raping the warden's daughter while he was already serving a rape sentence. *See People v. Teague,* 335 N.E.2d 594 (Ill. App. 1975). He filed this case under 42 U.S.C. § 1983, alleging mistreatment by two corrections officers at Illinois' Menard Correctional Institution. The

judge granted summary judgment against him on his claim for deliberate indifference to his serious medical needs and a jury found against him on his claim based on the use of excessive force.

It is undisputed that Teague suffers from arthritis, osteoporosis, and degenerative joint disease. His condition limits his physical capabilities. He walks slowly and bent over. From time to time, back spasms prevent him from walking at all. His back pain has made it difficult for him to go to meals or to participate in recreation activities. Occasionally his meals are delivered to his cell. He is prohibited from lifting more than 20 pounds.

During 1999, he visited the Health Care Unit (HCU) at Menard at least once a month, sometimes as often as three times a week. He was prescribed painkillers and physical therapy. He was given a "slow walk permit" because of his decreased mobility. The pass allowed him to walk at his own pace when going to meals or recreation. When his back did not improve, the medical director of the HCU prescribed a lower bunk placement. He was assigned a lower bunk at the South Lower cellhouse.

Defendant Edward Mayo was the officer in charge of that cellhouse and defendant Andre Taylor was a correctional officer. Teague alleges that Mayo was annoyed by Teague's medical restrictions, refused to honor the slow walk permit, and hassled Teague about walking slowly. Mayo allegedly referred to Teague as a "bug"—a derogatory term for an inmate who needs medication. After Teague complained about the problems he was

having with Mayo, Mayo was instructed to follow the doctor's orders as to the treatment of Teague. But, rather, Mayo shook down Teague's cell and ordered him moved to the third floor, which required him to climb stairs.

According to Teague, his problems with Mayo and Taylor culminated one day when the inmates were going to lunch. Teague asked Mayo to take him to the HCU because his back was causing him severe pain. Mayo took Teague to the guards' office were he accused Teague of pushing him. According to Teague's complaint—though, as we shall see, Teague did not prevail on this claim— Mayo and Taylor then seized Teague, handcuffed him behind his back, and dragged him up the stairs to his cell. Teague further alleged that they then shoved him face-first onto the floor, where Mayo pulled Teague's pants down and rammed a broomstick handle into his rectum. Also, Teague claims, Mayo burned him with a cigarette. Mayo and Taylor then locked Teague in his cell and left him there, bleeding from his rectum. To get someone to help him, Teague faked a suicide attempt. It worked, and Mayo and Taylor took Teague to the HCU, where they told the doctor that Teague had been injured in a fight with his cell mate. Teague was examined for facial lacerations and then thrown into segregation, where he claims he remained for four hours, still bleeding and in severe pain. When Teague simulated a second suicide attempt, the officer on duty took him to the HCU, where he was put on suicide watch for three days.

During the weeks following the incident, Teague says he repeatedly tried to tell the medical staff about the

assault and his injuries. At one point, the doctor prescribed suppositories for hemorrhoids. After more attempts to convince the medical staff of his injuries, Teague received a rectal examination. The results were inconclusive. Teague filed several grievances regarding this incident before filing this lawsuit pursuant to 42 U.S.C. § 1983 in September of 2000.

Along with his pro se complaint, Teague filed a motion to proceed *in forma pauperis* and a motion for the appointment of counsel. The district court granted leave to proceed *in forma pauperis* but, in accordance with 28 U.S.C. § 1915(b), assessed an initial partial filing fee of $6.23 and ordered Teague to make payments of 20 percent of his monthly income. Teague paid monthly amounts until the fee was paid in October 2003.

In December 2002, the court screened Teague's complaint under 28 U.S.C. § 1915A and found that it was not subject to summary dismissal. The court ordered the complaint filed and served on the defendants. The case was referred to a magistrate judge for pretrial proceedings. By this time, Teague had filed another motion for the appointment of counsel. Both motions were denied. Teague did not file an objection to the denial with the district judge. Teague moved for a third time for the appointment of counsel and again his motion was denied. Again he did not file objections with the district judge.

The fourth time Teague moved for the appointment of counsel—on May 10, 2004—his motion was granted. An attorney entered an appearance and moved for leave to

file an amended complaint. The amended complaint contained two counts. One alleged an Eighth Amendment claim for the assault and for a denial of medical care while he was in segregation. The other claim was for a violation of due process.

Although the original discovery deadline had passed, discovery was reopened and extended to June 2006. The defendants moved for summary judgment on the due process and medical indifference claims. Teague's attorney deposed both defendants and then responded to the motion.

The magistrate judge recommended granting the motion for summary judgment on the due process claim and "on the medical care portion of Count I" but denying summary judgment on the excessive force claim. On the medical care claim, the magistrate judge said that because it was undisputed that Teague received medical care after the alleged attack, there could be no liability for the denial of medical care. Teague objected to the recommendation, saying that the magistrate judge had misconstrued his claim. He said his claim was that the defendants denied him medical treatment while he was in segregation, not that they denied him medical treatment immediately after the alleged attack. The district judge adopted the magistrate judge's recommendation but on the basis that nothing indicated that Mayo and Taylor were assigned to the segregation unit when Teague was there so they could not be liable. A trial was then held on the excessive force claim, where the defendants testified that the assault never happened. A jury apparently believed them and returned a verdict in their favor.

Teague has appealed, raising three issues. First, he contends that the district judge abused his discretion by waiting more than two years to conduct the initial screening of his complaint. Second, he contends that the district judge abused his discretion by denying Teague's first three motions for the appointment of counsel. And finally, he claims there were material issues of fact which preclude the grant of summary judgment on his claim that Mayo and Taylor were deliberately indifferent to his serious medical needs.

All of the issues are a bit baffling. There is no meaningful remedy for the first two alleged errors, even were we to agree that error was present. Looking first to the issue of the initial screening of his complaint, we note that the district judge properly required Teague to make installment payments on his filing fee. The defendants say it was proper for the judge to wait until Teague's installment payments made up about half the filing fee to screen the complaint. This approach, they say, is contemplated by the statute and *Martin v. United States*, 96 F.3d 853 (7th Cir. 1996). Teague, on the other hand, does not agree that either *Martin* or the statute goes so far.

On this point, we agree with Teague. The relevant discussion in *Martin*, which is concerned with the appellate filing fee, asks whether "this court should insist upon the payment of the initial partial fee . . . ." *Id.* at 856. The answer was yes. And although at times during our discussion of the issue we did not modify "filing fee" by the words "initial partial," it is clear that throughout we

were talking about the partial fee, not the entire fee. Similarly, § 1915A(a) says that the court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action" in which a prisoner is suing a governmental entity or officer. The statute does not say "as soon as practicable after half the filing fee is paid." And it does not indicate that two years is within the contemplated definition of "as soon as practicable." Rather, the statute reflects the general concern for "the just, speedy, and inexpensive determination of every action and proceeding," as Rule 1 of the Federal Rules of Civil Procedure puts it.

That does not mean, however, that in every case, one can show that delay automatically establishes prejudice—or that justice delayed is always justice denied—though too often it is. In this case, we are not convinced that Teague has shown that he has been prejudiced by the delay. But, unfortunately, even if he was, at this point there is no remedy available. In situations where we find an abuse of discretion, we ordinarily order a new trial. But it is hard to see how a second trial, which would be even more removed in time from the alleged events, would be an improvement over the first. There simply is no effective relief available to Teague.

The same is true regarding the denials of the motions for the appointment of counsel—though this claim is, if anything, more baffling than the first. Counsel was eventually appointed; the complaint was amended; discovery was reopened; counsel responded to the summary judgment motions and conducted the trial—the conduct of

which Teague does not complain about. What relief can we possibly provide for Teague? Teague points to no error in the conduct of this case which can be corrected at this point in the litigation.

Finally, Teague claims that summary judgment should not have been granted on his claim that the defendants were deliberately indifferent to his serious medical needs. On appeal, he says that the record indicates that he suffered from two separate serious medical conditions: (1) degenerative joint disease and other back problems and (2) the injuries caused when Mayo and Taylor sodomized and burned him. He says the record shows that Mayo and Taylor were deliberately indifferent to these conditions.

There are a number of reasons his argument fails. For one thing, the issues bear little resemblance to the claims he made in the district court. In his amended complaint, he said that he was denied medical treatment in segregation. In his objections to the magistrate's recommendation that the defendants' motion for summary judgment be granted, he said his claim was that "defendants denied him medical treatment while he was in segregation, and not that they denied him medical treatment immediately after the attack." It is not surprising that the district judge granted the defendants' motion on the basis that there is nothing in the record to show that Mayo and Taylor were assigned to the segregation unit at the time so they could hardly be held liable.

To the extent that the claim in the district court could be stretched to correspond to his second claim on appeal,

it would nevertheless fail. In a very, very generous reading, events involving the alleged attack could be said to somehow relate to the claim that Teague was denied treatment in segregation. Even though the district court was right that nothing shows Mayo and Taylor were assigned to the segregation unit, as Teague claims, they might not have passed on to the segregation personnel information about Teague's condition.

But if we stretch the claim, what then are we to do with the fact that the jury, in the trial on the excessive force claim, found that there was no attack? It seems simply silly to reverse a summary judgment decision on the basis that facts may be in dispute as to whether Mayo and Taylor were deliberately indifferent to Teague's medical condition after an attack, which, following the verdict of the jury, did not take place.

Intuitively, we know a verdict trumps factual disputes on an identical issue. But just what principle of law applies here is an interesting question. The verdict is part of the same case as the summary judgment motion, so collateral estoppel, applying as it does to subsequent cases, does not strictly apply. *Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155 (7th Cir. 1995).

"Law of the case" is a prudential doctrine which seems relevant, but ordinarily, of course, it applies to prior rulings in the same case. *Id*. The verdict here came after the decision on summary judgment in the district court and so could have no effect on the district court's decision. It nevertheless now exists. And Teague does not contend that the evidence was insufficient or that trial

errors rendered the verdict unreliable. So the verdict
stands. It has become the law of the case. *People Who
Care v. Rockford Bd. of Educ.*, 171 F.3d 1083 (7th Cir. 1999).
As to issues of fact, given an unchanged record, "law-of-
the-case reluctance [to reconsider] approaches maximum
force." 18B Wright, Miller & Cooper, *Federal Practice and
Procedure: Jurisdiction 2d* § 4478.5 (2d ed. 2002), at 808.
Given that our review of the decision on summary judg-
ment is *de novo*, that our review is subsequent to the jury
verdict, and that we can affirm on any ground appearing
in the record (*see, e.g.*, *Wisconsin Cent., Ltd. v. Shannon*, 539
F.3d 751 (7th Cir. 2008), we find that the verdict of the
jury means that there was no attack. It follows, then, that
there can be no denial of medical care on the basis that
Teague alleges.

Less legalistically, our thinking can be summed up by a
statement in *Arizona v. California*, 460 U.S. 605, 619 (1983):

> First, while the technical rules of preclusion are not
> strictly applicable, the principles upon which these
> rules are founded should inform our decision. It is
> clear that res judicata and collateral estoppel do not
> apply if a party moves the rendering court in the
> same proceeding to correct or modify its judgment. 1B
> Moore ¶ 0.407, pp. 931-935; R. Field, B. Kaplan, & K.
> Clermont, Materials on Civil Procedure 860 (4th ed.
> 1978). Nevertheless, a fundamental precept of com-
> mon-law adjudication is that an issue once deter-
> mined by a competent court is conclusive. *Montana v.
> United States*, 440 U.S. 147, 153 (1979); *Federated Depart-
> ment Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981);

> *Cromwell v. County of Sac*, 94 U.S. 351, 352-353 (1877). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, *supra*, at 153-154.

Teague cannot be allowed to relitigate an issue, which is completely dependent on a fact he failed to establish.

Accordingly, the judgment of the district court is AFFIRMED.