NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted July 15, 2009[*]
Decided July 29, 2009

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No.  09-1047

| | |
|---|---|
| WILLIE C. SIMPSON,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>DALIA SULIENE and LORI ALSUM,<br>    *Defendants-Appellees*. | Appeal from the United States District Court for the Western District of Wisconsin.<br><br>No. 08-cv-54-bbc<br><br>Barbara B. Crabb,<br>*Chief Judge*. |

**O R D E R**

Wisconsin inmate Willie Simpson, who is HIV positive, filed suit under 42 U.S.C. § 1983 claiming that Dalia Suliene, a prison physician, and Lori Alsum, the manager of the Health Services Unit at the facility where Simpson is housed, violated the Eighth

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* FED. R. APP. P. 34(a)(2).

Amendment by refusing to treat him for a blood condition known as pancytopenia. The district court granted summary judgment in favor of the defendants because Simpson lacked evidence to establish that Dr. Suliene had disregarded a serious medical need or that Alsum had participated in any decisions regarding his health care. We affirm the judgment.

Except as noted, the facts are not in dispute. Simpson was thought to have pancytopenia in December 2006 when prison doctors sent him to consult with Dr. Andrew Urban, an infectious disease specialist at the University of Wisconsin Hospital. Pancytopenia is the name given to a pronounced reduction in the number of red and white blood cells and platelets, a condition that can have myriad causes. STEDMAN'S MEDICAL DICTIONARY 1303 (28th ed. 2006)). Urban speculated that the symptoms might be related to Simpson's HIV, a common trigger for pancytopenia, but recommended a hematology evaluation to rule out other potential causes for his reduced blood cell levels. In August 2007, Suliene ordered a hematology evaluation and requested additional lab work. Two months later, before that evaluation was scheduled to be performed, Simpson had his blood tested while being seen for a different condition; those tests did not support a current finding of pancytopenia. In an affidavit Suliene submitted at summary judgment, she avers that in January 2008 she also consulted by email with a hematologist, Dr. Elliot Williams, and the two agreed that Simpson did not have pancytopenia. As a result, Suliene cancelled the hematology evaluation. Simpson, however, offered his own affidavit asserting that Williams told him the email exchange never occurred. He also produced a letter Alsum wrote him saying that she could not provide copies of the emails exchanged by Suliene and Williams because there were no such emails. Suliene reviewed additional blood tests in May, June, and July of 2008, and concluded that none of them indicated pancytopenia. She also stated in her affidavit that Simpson continued to receive regular blood tests.

In August 2008, after filing suit, Simpson finally saw Dr. Williams for a hematology evaluation. Williams diagnosed chronic mild pancytopenia but, like Dr. Urban, noted that the cause for Simpson's reduced blood cell levels was unclear and the condition could be due to his HIV. Williams doubted, but could not rule out, the possibility that Simpson's blood levels suggested an underlying bone marrow disorder such as leukemia. Williams told Simpson that he could perform a bone marrow biopsy to investigate further what had triggered the pancytopenia, but advised him that the chances of finding a treatable cause for his blood levels were low. Simpson chose to forgo the biopsy and instead opted to wait and see if his condition worsened. Williams recommended that Simpson reconsider the biopsy option if there was a substantial downward movement in his blood counts.

On appeal Simpson principally argues that the district court erred in granting summary judgment for the defendants, a decision we review de novo. *See Teague v. Mayo*, 553 F.3d 1068, 1073 (7th Cir. 2009). He emphasizes that Suliene did not obtain a hematology evaluation until 2008 even though Dr. Urban had recommended that step in 2006. Delay in medical treatment can be the basis of an Eighth Amendment claim. *See, e.g., Walker v. Benjamin,* 293 F.3d 1030, 1038 (7th Cir. 2002); *Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir. 1996). But here the delay was in getting a diagnostic test. Simpson did not show that he was actually denied treatment or even that a treatment for pancytopenia exists. The record shows that pancytopenia is merely an indicator that something else is awry: it is not treated directly but is resolved by addressing the underlying illness that caused it. And Simpson never alleged that his HIV went untreated. Nor did he contend that he has another disease that might cause pancytopenia, such as leukemia, for which he did not receive treatment because his hematology evaluation was delayed. Indeed, when presented with the option of investigating further what had triggered his pancytopenia, Simpson opted to take a wait-and-see approach precisely because the likelihood of finding a treatable cause for the symptom was low. Yet to succeed on his Eighth Amendment claim, Simpson had to establish with evidence that he had an objectively serious medical need, which in a case like this means that he had a diagnosed condition requiring treatment. *See Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007); *Williams v. Liefer,* 491 F.3d 710, 714-15 (7th Cir. 2007). His failure to show that he needed any treatment at all (beyond the regular blood tests he already receives) therefore dooms his suit.

Simpson next contends that the district court wrongly excluded as hearsay Suliene's statement in an affidavit that she had consulted with Dr. Williams by email and he agreed with her that Simpson did not have pancytopenia. We review claims of evidentiary error for an abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997); *Cody v. Harris,* 409 F.3d 853, 860 (7th Cir. 2005). According to Simpson, had the statement been admitted, he would have been able to present a question of material fact because, he says, Williams denied the exchange and Alsum stated that there were no emails between Suliene and Williams.

Simpson is right that the district court should have met his demand to admit at least Suliene's representation about her side of the purported conversation, since it is a nonhearsay statement of a party opponent if offered against her. *See* FED. R. EVID. 801(d)(2)(D); *Germano v. Int'l Profit Ass'n, Inc.*, 544 F.3d 798, 801 (7th Cir. 2008). And the statement had relevance if shown to be false, since a lie about consulting with Williams might indicate that Suliene did ignore Simpson's condition until he filed suit and was trying to cover. The problem for Simpson, however, is that he himself failed to produce admissible evidence that Dr. Williams denied exchanging emails with Suliene. Simpson's

account of what Williams purportedly told him *is* hearsay, and the letter from Alsum does not rule out that an exchange occurred (it could have been deleted or misplaced). In the end, though, even if the evidence had unfolded as Simpson envisioned, all he would have shown is that Suliene had failed to investigate whether he had pancytopenia—not that the condition required treatment he did not receive. Excluding the statement was therefore harmless. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (applying harmless error analysis to evidentiary ruling).

Simpson also challenges the district court's grant of summary judgment in favor of Alsum. He contends that Alsum was "at all times" involved in his health care and cites her job description, which provides that she "works with the primary care physician." Alsum's primary role at the prison was administrative, not providing health care, but even if she had participated in Suliene's treatment decisions, Simpson did not establish any Eighth Amendment violation by Suliene. That failure of proof likewise ends the case as to Alsum.

Finally, Simpson argues that the district court erred in denying his motion to sanction Suliene and her counsel, a decision we review for an abuse of discretion. *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). Simpson believes that Suliene should be sanctioned because he thinks she perjured herself in the affidavit statement that the court excluded. The court reasoned that sanctions would be inappropriate because Simpson had not shown that the inconsistency between the affidavit and Alsum's and Williams's statements rose to the level of perjury, defined as giving "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Bermea-Boone*, 563 F.3d 621, 626-27 (7th Cir. 2009) (quotations omitted). As we have noted already, Simpson did not even establish through admissible evidence that Suliene's affidavit is untrue; Simpson could be the one who has misrepresented the content of a communication with Williams. And if Simpson's representation is truthful, it is possible that Suliene deliberately lied, but it is also possible that she misremembered, that the email exchange had been deleted, or that Williams and Alsum were wrong. *Cf. Allen v. Chi. Transit Auth.*, 317 F.3d 696, 702 (7th Cir. 2003) (finding perjury where plaintiff admitted he lied at deposition). The district court's decision was not an abuse of discretion. *See Montano v. City of Chi.*, 535 F.3d 558, 564 (7th Cir. 2008) (holding that discrepancies in testimony do not amount to perjury).

**AFFIRMED**.