NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 13, 2017[*]
Decided April 24, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

No. 16-2875

| | |
|---|---|
| CARL GALLO, JR., | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 13-1476 |
| | |
| LORNA STOKES, | Joe Billy McDade, |
| *Defendant-Appellee.* | *Judge.* |

**O R D E R**

Carl Gallo, Jr., an inmate at Hill Correctional Center in Galesburg, Illinois, sued the prison nurse, Lorna Stokes, and nine other staff members and administrators under 42 U.S.C. § 1983, alleging that Stokes had twice punished him for exercising his constitutional right to file grievances and that the other defendants were complicit by failing to "investigate or resolve" his complaints about Stokes. The district court dismissed the other defendants from the case at screening, 28 U.S.C. § 1915A, but allowed a pair of

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

First Amendment claims against Stokes to proceed. Only one of those claims survived summary judgment, and after the court had denied his requests to recruit counsel, Gallo went to trial on the remaining claim and lost. On appeal Gallo challenges the denials of his requests for counsel, the grant of summary judgment to Stokes, and the dismissal of the other defendants.

In November 2011 Gallo had submitted an emergency grievance about Stokes, complaining that she had threatened him during a medical visit a week earlier—that she had "got[ten] mad" when he disagreed with her about the proper dosage of Metamucil (a fiber supplement) and had said to him "Listen Gallo don't argue with me, I'm not going to discuss it with you, and next time you write a grievance on me, I'm going to write you a ticket, do you understand me Mr. Gallo, now zip it." Gallo's counselor sent the grievance to the healthcare administrator, who responded that Stokes had been "following policies and procedures" and that Gallo's "continued harassment" and "continuous false grievances" were "inappropriate." The grievance was denied.

A week after Gallo filed the grievance Stokes reported him for violating prison rules by being belligerent and harassing her on several occasions. For example, he had shouted from his cell that Stokes had better provide medical treatment "or else," and he had yelled, "You are not the doctor and cannot prescribe my medications." After a hearing, Gallo was found guilty of insolence and given a verbal reprimand.

Over the next month, Gallo submitted two more grievances concerning Stokes. The first repeated his allegation that Stokes had threatened him at the earlier medical visit, and so was denied as duplicative. The second recounted a disagreement he'd had with Stokes about his medication, and accused her of preventing him from seeing a doctor. That grievance, too, was denied.

While the second grievance was pending, Gallo submitted a sick-call request saying he hadn't gotten his medication. Yet that same day, guards searched his cell and found several medications, including some that Gallo said he hadn't received. Some of them having expired (hydrocortisone cream, eye drops, and nasal spray), a guard phoned the infirmary about them. Stokes answered—and then cited Gallo for possessing expired medication, not taking his medication, and lying about not receiving his medication. She also repeated that Gallo was "belligerent and argumentative" in her presence—raising his voice and demanding the doctor. She added that he'd refuse to leave the exam room and instead sit in a chair staring at her. A hearing committee found Gallo guilty of insolence and possessing "drugs and drug paraphernalia." He was denied contact visits for six months and demoted to "C grade" for one month, resulting in restricted commissary and telephone privileges.

Gallo alleges in his suit that Stokes had fabricated the two disciplinary reports in order to punish him for complaining that she had threatened him. The other defend-

ants, he said, participated with Stokes by rejecting his grievances and thus condoning her actions. After allowing the case to proceed against Stokes alone, the district court denied Gallo's request for assistance in recruiting counsel because Gallo had not tried to find a lawyer himself.

The court carved Gallo's allegations into separate First Amendment claims, one for each disciplinary report that Stokes had written. Since the first report had resulted only in a reprimand, the court granted summary judgment in favor of Stokes on that claim, reasoning that the penalty wasn't sufficiently adverse to deter protected speech. But because the second disciplinary report had led to a loss of privileges, the court allowed that claim to proceed to trial.

Gallo again asked the district court to recruit counsel for him, explaining that he lacked experience with trial, had been relying on jailhouse lawyers for assistance, and was hindered by limited education and a learning disability. The court denied the motion, reasoning that the claim was "simple" and Gallo competent to litigate it—his "comprehensible and organized" filings demonstrated that he understood the elements of the First Amendment claim and what he must show to prove it. Even if Gallo had been receiving help from jailhouse lawyers, the court continued, he had demonstrated during the pretrial conference that he understood the issues and could represent himself. And in fact at the trial Gallo presented witnesses and exhibits, cross-examined Stokes and her witnesses, and testified himself. Still, the jury found for Stokes, who denied threatening Gallo or issuing disciplinary reports because of his grievances.

On appeal Gallo argues that the district court abused its discretion in not recruiting counsel. Gallo repeats the reasons he gave the district court—his pretrial submissions exaggerate his competence because they were written by jailhouse lawyers, he has only a high school education, and he has a learning disability. He also recounts instances at trial that, he says, show his need for an attorney—for example, at times he experienced difficulty presenting evidence and failed to object to hearsay. But the district judge properly considered both the complexity of the case and Gallo's ability to litigate it himself. *See Olson v. Morgan*, 750 F.3d 708, 711–12 (7th Cir. 2014); *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc). The judge evaluated Gallo's written submissions and performance during the pretrial conference, in which Gallo presented witness and exhibit lists, explained his witnesses' expected testimony and its relevance to his claim, and acknowledged that he understood the facts, law, and proceedings.

Gallo also challenges the grant of summary judgment on his claim that he was punished with a reprimand for filing a grievance against Stokes. But he had to show that the punishment was severe enough to deter future protected speech. *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). The reprimand he received does not satisfy this threshold. As we said in *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982), it "would trivi-

alize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise."

Gallo further argues that the district court erred in dismissing the other defendants at screening. But as the judge explained, prison administrators who handle inmate grievances are not liable simply because they deny some of the grievances. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). And as Gallo's theory was that the other defendants shared responsibility for First Amendment violations committed by Stokes by not stopping her alleged misconduct, her exoneration defeats his derivative contention against the defendants. *Teague v. Mayo*, 553 F.3d 1068, 1072–73 (7th Cir. 2009).

Finally Gallo contends that the district judge abused his discretion by preventing him from describing all his exhibits and presenting all of them to the jury. The district court did not allow Gallo to call all his proposed witnesses, and regularly intervened to limit irrelevant or repetitive questions, but Gallo has not pointed to any error in the these rulings. The judgment is therefore

AFFIRMED.