**Ronald MADDEN, Petitioner,**

v.

**Kevin MYERS, Respondent.**

**Honorable Malcolm Muir, United States District Judge, Nominal Respondent.**

**No. 96–8046.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Aug. 8, 1996.

Decided Dec. 3, 1996.

As Amended Dec. 9, 1996.

Ronald Madden, Clifton, TN, Pro Se.

Kevin Myers, Clifton, TN, Pro Se.

Malcolm Muir, United States District Judge, Williamsport, PA, Nominal Respondent.

Before: BECKER, ALITO and McKEE, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Ronald Madden petitions this Court under 28 U.S.C. § 1651(a) for a writ of mandamus requiring the district court to promptly act upon his request for habeas corpus relief. In his habeas petition filed in the District Court for the Middle District of Tennessee, but transferred to the District Court for the Middle District of Pennsylvania, Madden challenged his extradition from Pennsylvania to Tennessee. On February 21, 1996, nine days after receiving the submission, the magistrate judge filed a report recommending that the habeas petition be denied. On March 4, 1996, Madden filed objections to the magistrate judge's report, and, on July 15, he filed this mandamus petition. The petition was accompanied by an application to proceed *in forma pauperis;* hence we must determine

whether the filing fee payment requirements of the Prison Litigation Reform Act of 1996 ("PLRA" or "Act")apply to mandamus petitions.[1] Because we believe that the present petition is not the type of action that Congress meant to deter when it passed the PLRA, we hold that the fee requirements of the PLRA do not apply. On the merits, we deny the mandamus petition.

## I.

### A.

■ Before turning to the merits of Madden's petition, we must determine whether he may proceed *in forma pauperis,* and, if so, whether he must pay a filing fee of $100.00 pursuant to the PLRA. The PLRA dramatically altered the consequences attached to *in forma pauperis* status for prisoners. 28 U.S.C. § 1915; *see Santana v. United States,* 98 F.3d 752, 753–54 (3d Cir. 1996) . An incarcerated *in forma pauperis* litigant now must pay the full filing fee when he brings a civil action or files an appeal, although he may pay on an installment plan. 28 U.S.C. § 1915(b). Because Mr. Madden's affidavit of poverty shows that he has only $5.11 in his prison account, has no other assets, and has received an income of only $35.50 in the past two months, he is entitled to proceed *in forma pauperis.* However, if the PLRA is applicable to mandamus actions such as Madden's, he must somehow pay a fee of $100 in order to obtain judicial review of his petition.

### B.

■ The PLRA distinguishes between criminal and civil actions, and requires federal courts to collect filing fees only in the latter cases, where "a prisoner brings a civil action or files an appeal." *Id.* § 1915(b)(1). Yet a writ of mandamus is by its very nature outside the ambit of this taxonomy. It is not an "action", and, *a fortiori,* not a "civil action." A writ of mandamus, which is authorized by the All Writs Act, 28 U.S.C. § 1651,[2]

---

1. On April 26, 1996, the President signed the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. 104–134, 110 Stat.

1321 (1996), Title VIII of which is the Prison Litigation Reform Act of 1996.

2. 28 U.S.C. § 1651(a), sourced in the Judiciary Act of 1793, provides:

instead constitutes a procedural mechanism through which a court of appeals reviews a carefully circumscribed and discrete category of district court orders.[3]  *See Martin v. United States,* 96 F.3d 853, 854 (7th Cir.1996) (mandamus is "a procedural step in the ... litigation."); *Green v. Nottingham,* 90 F.3d 415, 417 (10th Cir.1996) (acknowledging that "[m]andamus proceedings have been considered outside of district court jurisdiction over 'civil actions,'" while concluding that writs of mandamus fall within the scope of § 1915 of the PLRA).

Neither is a writ of mandamus an "appeal." In the context of the PLRA, the word "appeal" clearly means the appeal of a civil action. *See Martin,* 96 F.3d at 854. While mandamus is typically characterized as an appellate power, *id.* (mandamus is "realistically a form of interlocutory appeal"), it is different in kind from an appeal. Indeed, a writ of mandamus may not issue if a petitioner can obtain relief by appeal; a petition for mandamus "must not be used as a mere substitute for appeal." 16 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3932, at 185 (1977).

Because a writ of mandamus is neither a "civil action" nor an "appeal," our decision is not controlled by the plain meaning of the text.[4] We must, of course, ensure that we have not frustrated congressional intent. *See Stafford v. Briggs,* 444 U.S. 527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980) (concluding that a court should move beyond literal

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

Writs of mandamus are also authorized by 28 U.S.C. § 1361, which grants district courts jurisdiction in "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Actions pursuant to § 1361 are often the method for seeking review of an agency action. *See* 5 U.S.C. § 703. Although the same considerations may apply, whether the PLRA applies to § 1361 petitions is not before us, and, therefore, we need not decide it at this time.

**3.** A writ of mandamus has traditionally been available to a court of appeals only "to confine an inferior court to a lawful exercise of its pre-

construction of a statute to effectuate "the objects and policy of the law") (citations omitted). The clear import of the PLRA is to curtail frivolous prison litigation, namely that brought under 42 U.S.C. § 1983 and the Federal Torts Claims Act. *See Santana,* 98 F.3d at 755 (citing H.R. Conf. Rep. No. 104–378, 104th Cong., 2d Sess. (1996)).

As a result, we agree with the courts of appeals that have held that where the underlying litigation is criminal, or otherwise of the type that Congress did not intend to curtail, the petition for mandamus need not comply with the PLRA. *See Martin,* 96 F.3d at 854–55 ("[T]he scope of the new Act should turn on whether the litigation in which it is being filed is within that scope."); *In re Paul Nagy,* 89 F.3d 115, 117 (2d Cir. 1996). This interpretation alone preserves the writ for prisoners who may have no other relief in a criminal action in which a court has exceeded its judicial power or failed to use its power "where there is a duty to do so." *Lusardi v. Lechner,* 855 F.2d 1062, 1069 (3rd Cir.1988). In the case before us, Madden seeks a writ of mandamus relating to a habeas corpus action. This Court, in *Santana,* concluded that, because of the hybrid nature of habeas corpus actions and evidence that Congress did not intend to reform habeas corpus law in the PLRA, such actions were not subject to the Act's fee requirements. 98 F.3d at 754–56. Therefore, Madden is not required to meet the fee obligations of the PLRA.

scribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967) (quoting *Roche v. Evaporated Milk Ass'n.,* 319 U.S. 21, 26, 63 S.Ct. 938, 941–42, 87 L.Ed. 1185 (1943)).

**4.** In this case, we face a very different question from that presented by an *in forma pauperis* petition for habeas relief. In *Santana,* 98 F.3d at 754–55, this Court acknowledged that habeas corpus petitions fit within the literal scope of the PLRA. *Id.* (citing *Ex Parte Tom Tong,* 108 U.S. 556, 559, 2 S.Ct. 871, 872, 27 L.Ed. 826 (1883)). However, because of the unique nature of habeas relief and evidence that Congress intended to reform habeas corpus law through the Antiterrorism and Effective Death Penalty Act, we concluded that a prisoner seeking habeas corpus relief was not subject to the fee requirements of the PLRA. *Id.* at 754–56.

■ Another reason that Congress could not have intended that petitions for writ of mandamus fall within the scope of the PLRA is that seeking a writ of mandamus is often the only way a litigant can obtain review of certain orders or can compel a district judge to act. Congress has demonstrated a grave concern about delay in civil cases, *see, e.g.,* Civil Justice Expense and Delay Reduction Plans, 28 U.S.C. §§ 471–482 (requiring district courts to implement plans intended in part to "ensure just, speedy, and inexpensive resolutions of civil disputes"). Mandamus petitions provide an avenue for dealing with the situation (which fortunately occurs infrequently) where cases have been unduly delayed in the district court. *See, e.g., McDonnell Douglas Corp. v. Polin,* 429 F.2d 30, 30–31 (3rd Cir.1970) (ordering district court not to defer ruling on a motion for transfer until all discovery was completed).

We have also held that mandamus is the appropriate remedy when the district court ignores this Court's mandate. *Blasband v. Rales,* 979 F.2d 324, 328–29 (3rd Cir.1992). In *Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 163 (3rd Cir.1993), this Court held that mandamus is the proper way to seek review of a judge's order refusing to recuse under 28 U.S.C. § 455 where the judge's impartiality might reasonably be questioned. Mandamus in these instances serves not only to correct a harm to a litigant, but to preserve judicial integrity and public confidence. Review after final judgment might cure the harm to the litigant, but it would not cure the additional separate harm to the public confidence. Because mandamus petitions fall outside the plain meaning of the PLRA, *see supra* at 76–77, and the writ is an effective tool in exercising this court's supervisory powers, *bona fide* mandamus petitions, regardless of the nature of the underlying actions, cannot be subject to the PLRA.[5]

### C.

■ A litigant should not be able to evade the PLRA by masking as a mandamus petition a paper otherwise subject to the Act. We will, therefore, require that any action improperly styled as mandamus must meet the fee requirements of the PLRA. It is the nature of the document, rather than the label attached by the litigant, that controls. This acknowledgment creates, however, a serious administrative problem in the processing of *pro se* litigation in the federal courts, particularly in the area of docketing. Where the PLRA applies, the petitioner must file an affidavit of poverty, a six-month account statement, and a form authorizing prison officials to withdraw money from his account; where it does not, the petitioner need only file an affidavit of poverty. Moreover, and more importantly, the Deputy Clerk receiving the papers, who is not law trained, will have to make a decision as to whether the PLRA applies in order to insure that the litigant has filed the proper documents. While the Deputy Clerk will, of course, be able to consult the legal staff within the Court, it will not always be easy to determine from the papers whether the PLRA applies to something styled as a mandamus because it really masks a civil action or appeal that is subject to the PLRA.

■ Because of the importance of these concerns to the administration of justice within the Circuit, we think that it will be useful for the Clerk's office to posit that a paper styled as a mandamus petition will not be subject to the PLRA unless it appears clearly that the styling is an effort to avoid the requirements of that Act. We also suggest that it follow the procedures set forth in the margin.[6]

---

5. One purpose of the PLRA is to alleviate the burden on government resources of responding to frivolous lawsuits. *See* 141 Cong. Rec. S626–29 (daily ed. Sept. 29, 1995). But exempting mandamus petitions that assert putative delay in adjudication of pending cases will not undermine this purpose. The government is not required to file a response to a mandamus petition unless the court so directs. Furthermore, "[i]f the court is of the opinion that the writ should not be granted, it shall deny the petition," and it may do so without a response from the government. Fed. R.App. P. 21(b). It is therefore logical to assume that the government will never be asked to file a response in a frivolous lawsuit.

6. A litigant filing a petition for writ of mandamus must file an affidavit of poverty with his petition. If the Court determines that the PLRA applies, it will issue an order directing that the litigant file a six month prison account statement and a form authorizing the prison to assess and deduct mon-

Of course, if a prisoner files a paper that is styled as a mandamus petition and that does not clearly appear to be an effort to avoid the requirements of the PLRA but that in fact constitutes an appeal in a civil action, the PLRA would likely apply and a filing fee would have to be collected. This makes clear that the Clerk's office's treatment of questionable mandamus petitions must be subject to review by the Court.

## II.

■ Turning to the merits of Madden's mandamus petition, we find no basis for granting the petition for writ of mandamus. Mandamus is an appropriate remedy in extraordinary circumstances only. *Kerr v. United States Dist. Ct.,* 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976). A petitioner seeking the issuance of a writ of mandamus must have no other adequate means to obtain the desired relief, and must show that the right to issuance is clear and indisputable. *See Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980); *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 148–49, 98 L.Ed. 106 (1953).

■ Madden asks this Court to issue an order directing the district court to decide his case forthwith and to hold that his claims have been exhausted. As we have noted above, an appellate court may issue a writ of mandamus on the ground that undue delay is tantamount to a failure to exercise jurisdiction, *see, e.g., McClellan v. Young,* 421 F.2d 690 (6th Cir.1970), and, without actually issuing a writ, may order a district court not to defer adjudicating a case. *See McDonnell Douglas Corp.,* 429 F.2d 30–31. Madden cannot demonstrate that a writ of mandamus is warranted. Because he can appeal the decision of the district court when a final order is issued, Madden cannot demonstrate

that no other adequate means of relief regarding the issue of exhaustion exists.

Madden's claims of delay have greater force. That resolution of Madden's claims has been delayed is clear. The Magistrate Judge's Report and Recommendation was filed in February, 1996. Madden filed objections in March and motions to amend the petition and for appointment of counsel in April. As of the time Madden filed his petition for writ of mandamus, no action had been taken on these motions and no final order had been issued. Although this delay is of concern, it does not yet rise to the level of a denial of due process. We are confident that the district court will issue its decision quickly.

In sum, the motion to proceed *in forma pauperis* will be granted. Because the provisions of 28 U.S.C. § 1915(b) are inapplicable, no docketing fee will be assessed. The petition for writ of mandamus will be denied. This denial is without prejudice to petitioner filing a new petition for writ of mandamus if the district court does not act within 60 days of the date of this order.

---

ey from the litigant's prison account. If the prisoner complies with the court order, fees will be assessed in accordance with the PLRA, and the court will proceed to decide the matter. Failure to comply with the court order will result in the dismissal of the petition for failure to pay certain fees. Third Circuit L.A.R. Misc. 107.1.

