**Sue Ellen MONCRIEF, Appellant**

v.

**CHASE MANHATTAN MORTGAGE CORPORATION; Citibank, NA As Trustee; Terrence J. McCabe, doing business as McCabe, Weisberg, Conway, PC; EMC Mortgage Corpora-**

tion; Judge Linda Wallach Miller; First Union National Bank/Novastar, A Virginia Corp.; William Peterson, Individually and d/b/a Affiliated/Americorp Builders; Jean Lee, Individually and d/b/a Northeast Mortgage; Dominick P. Stranieri; Bruce Morgan, Individually and d/b/a Premier Abstract Services, Novastar.

No. 07–4145.

United States Court of Appeals, Third Circuit.

Submitted Pursuant To Third Circuit LAR 34.1(a) April 7, 2008.

Filed: April 23, 2008.

Sue Ellen Moncrief, Reeders, PA, pro se.

Michael W. McTigue, Jr., Theodore F. Haussman, Jr., Jessica Kozlov-Davis, Drinker, Biddle & Reath, Margaret Gairo, McCabe, Weisberg & Conway, Mary E. Butler, Supreme Court of Pennsylvania Administrative Office of PA Courts, Philadelphia, PA, John R. O'Keefe, Jr., Matthew C. Collins, Metz Lewis, Pittsburgh, PA, Marshall E. Anders, Anders & Masington, Stroudsburg, PA, for Chase Manhattan Mortgage Corporation; Citibank, NA As Trustee; Terrence J. McCabe, doing business as McCabe, Weisberg, Conway, PC; EMC Mortgage Corporation; Judge Linda Wallach Miller; First Union National Bank/Novastar, A Virginia Corp.; William Peterson, Individually and d/b/a Affiliated/Americorp Builders; Jean Lee, Individually and d/b/a Northeast Mortgage; Dominick P. Stranieri; Bruce Morgan, Individually and d/b/a Premier Abstract Services, Novastar.

Before: AMBRO, FUENTES and FISHER, Circuit Judges.

## OPINION

PER CURIAM.

Sue Ellen Moncrief appeals pro se from the District Court's dismissal of her complaint. For the reasons that follow, we will affirm.

### I. *Background*

Moncrief and Kareem Al–Amin acquired the deed to a home from Americorp Builders on September 12, 1998. Citibank, N.A. ("Citibank"), the trustee, filed a mortgage foreclosure action against Moncrief and Al–Amin on November 2, 2002, in the Monroe County Court of Common Pleas. Default judgment was entered against Moncrief and Al–Amin on May 8, 2003, and after a March 30, 2006 sheriff's sale, the sheriff issued a deed for the premises dated April 25, 2006, to EMC Mortgage Corporation ("EMC"). Moncrief filed a notice of appeal to the Pennsylvania Superior Court, which was quashed as moot on February 26, 2007.

After Moncrief refused to vacate the property, EMC filed an ejectment action in the Monroe County Court of Common

Pleas in July 2006. In answer to EMC's complaint (and in response to EMC's summary judgment motion), Moncrief attacked the foreclosure action's merits, claimed that the sheriff's sale was void, and that the ejectment action was thus illegal. On May 9, 2007, the Court of Common Pleas granted EMC's motion for summary judgment upon finding that Moncrief's challenges to the foreclosure were barred by issue preclusion.[1] Moncrief did not appeal from this decision.

Meanwhile, on April 5, 2007—while the summary judgment motion in the ejectment action was pending—Moncrief filed the federal complaint at issue here. The complaint alleged that the defendants, which include EMC, Citibank, Chase Manhattan Mortgage Corporation ("Chase"), and several others, "conspired and colluded to deprive [Moncrief] of [her] home . . . by coercing and manipulating [her] into an illegal foreclosure . . . in order to cover up, conceal, and perfect a mortgage fraud scheme." Moncrief then alleged that "[e]vidence exists to show that Citibank . . . did not have standing to bring foreclosure action 2002–Cv–7851." She also named Judge Wallach Miller, who presided over the foreclosure action, as a defendant because she refused to grant a hearing concerning the mortgage fraud or "other illegalities in this case." Moncrief alleged that she was deprived of due process "and other civil rights, including but not limited to equal credit opportunities and the right to enjoy property as is afforded to all citizens." She asked the District Court to, among other things, assume jurisdiction over the ejectment case and enjoin the Court of Common Pleas from acting on EMC's motion for summary judgment in the ejectment action.

Upon the defendants' motions to dismiss, and after receiving the Magistrate Judge's report and recommendation and Moncrief's objections thereto, the District Court dismissed Moncrief's complaint under the *Rooker–Feldman* doctrine, and denied her motion for recusal.[2] The District Judge denied the other pending motions as moot. Moncrief appeals.[3]

## II. *Rooker–Feldman Doctrine*

■ The *Rooker–Feldman* doctrine embodies the following principles set forth by the Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983): "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court determinations or to evaluate constitutional claims that are inextricably intertwined with the state court's [decision] in a judicial proceeding." *Marks v. Stinson*, 19 F.3d 873, 885 n. 11 (3d Cir. 1994) (internal citation and quotation omitted). The doctrine applies only when a plaintiff asks a district court to redress an injury caused by the state court judgment itself-not when a plaintiff merely seeks to relitigate a claim or issue already litigated in state court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292–93, 125 S.Ct. 1517, 161 L.Ed.2d 454

---

1. The Court of Common Pleas found that Moncrief's defenses were not barred by claim preclusion, however, because the cause of action in the foreclosure case, which was just the source of EMC's title, was different than the cause of action in the ejectment action.

2. The motion for recusal was based on Moncrief's assertion that Judge Munley was biased

because Judge Wallach Miller stated in a speech that the District Judge's wife was one of her inspirations for attending law school.

3. We have jurisdiction pursuant to 28 U.S.C. § 1291, and our review is plenary. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 451 (3d Cir. 2006).

(2005). Here, at least in part, Moncrief seeks redress from the state court's judgment in the foreclosure action. Accordingly, to the extent that Moncrief seeks to "appeal from" the state court's foreclosure judgment, the District Court correctly dismissed the claim under *Rooker–Feldman.* *See Exxon Mobil Corp.,* 544 U.S. at 284, 125 S.Ct. 1517.

### III. *Preclusion*

█ It appears that Moncrief also seeks to relitigate the foreclosure action, which, while not barred by *Rooker–Feldman,* is prohibited by Pennsylvania's preclusion doctrine.[4] Federal courts are required to give state court judgments the same preclusive effect that the issuing state courts would give them. *See Rycoline Prods., Inc. v. C & W Unlimited,* 109 F.3d 883, 887 (3d Cir.1997). Under Pennsylvania law, claim preclusion

> is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. [Claim preclusion] applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action.

*Balent v. City of Wilkes–Barre,* 542 Pa. 555, 669 A.2d 309, 313 (1995) (internal citations omitted).

Here, Moncrief claims that the foreclosure was illegal because it was premised on a mortgage fraud scheme and that Citibank did not have standing to bring the foreclosure action. The claims regarding the legality of the foreclosure are predicated on the same underlying transaction (the mortgage agreement) that was the basis of the foreclosure action. *See United States v. Athlone Indus., Inc.,* 746 F.2d 977, 983–84 (3d Cir.1984) (claim preclusion "generally is thought to turn on the essential similarity of the underlying events giving rise to various legal claims."). Moncrief argues that she could not have raised the mortgage fraud claim in the foreclosure action because she was not aware of it until 2004 when she received documents from Chase which purportedly showed a higher mortgage than the one she had agreed to, and contained forged signatures and other discrepancies. Pennsylvania law belies her assertion.

Even if Moncrief had no reason to know of facts underlying a fraud claim before the foreclosure action was commenced, the foreclosure action itself would have put her on notice that something was amiss with her mortgage. As is relevant here, Pennsylvania law requires a foreclosure complaint to include: (1) a specific averment of default, (2) an itemized statement of the amount due, and (3) a demand for judgment of the amount due.[5] *See* Pa. R. Civ. P. 1147. Accordingly, the complaint would have provided the amount of the mortgage, and if this amount differed from the mortgage that Moncrief believed she had entered into, she could have raised a

---

**4.** Even if we "reject the district court's stated grounds for granting summary judgment ... we nonetheless may affirm the district court's order ... on other grounds." *Turner v. Crawford Square Apartments III, L.P.,* 449 F.3d 542, 548 (3d Cir.2006).

**5.** "[A] reference to the indebtedness of a mortgagor is essential. An execution sale in foreclosure cannot be conducted in a vacuum; it must be a sale to satisfy an obligation. A sheriff could not possibly distribute the proceeds in a foreclosure sale ... without knowing the exact extent of the claim of the foreclosing mortgage." 4 Goodrich Amram 2d § 1147(6):1.

counterclaim regarding the validity of the mortgage. *See First Fed. Sav. & Loan Ass'n of Erie v. McAfee,* 15 Pa. D. & C.3d 287, 288, 1980 WL 641 (Pa.Ct.C.P.1980) ("Because ... foreclosures proceedings are in rem, any defense must go to the existence and validity of the mortgage."); Pa. R. Civ. P. 1148. Accordingly, Moncrief's claim that the foreclosure was illegal due to mortgage fraud is precluded because it is based on the same transaction as the foreclosure action, and she could have raised it in that action.[6] *See Indymac Bank F.S.B. v. Vicuna,* 83 Pa. D. & C.4th 129, 136 (Pa.Ct.C.P.2007) (amendment of answer in foreclosure action allowed for addition of counterclaim of fraud in the inducement of purchasing a mortgage to foreclosure action).

■ Moncrief's claim that Citibank did not have standing to bring the foreclosure action is also precluded because she could have raised this issue as a defense to, or "new matter" in, the foreclosure action. *See Noel v. First Fin. Bank,* 855 A.2d 90, 92, 96 (Pa.Super.Ct.2004) (discussing defendant's new matter challenging the plaintiffs' standing to record mortgage satisfaction piece).

### IV. Claims Against State Court Judge

■ Moncrief also accuses Judge Wallach Miller, who presided over the foreclosure action, of violating her civil rights.[7] She claims that Judge Wallach Miller was biased because she presided over a case involving the same property that was involved in Moncrief's foreclosure, and because of Moncrief's involvement with a group that opposes mortgage fraud. She also alleges that Judge Wallach Miller mishandled her case and would not allow her to bring the mortgage fraud claim on appeal.

A judicial officer in the performance of her duties has absolute immunity from suit. *Mireles v. Waco,* 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (internal citation and quotation omitted). Judge Wallach Miller's decision to preside over the case, although she had once presided over an-

6. Pennsylvania law requires fraud to be plead with particularity. Pa. R. Civ. P. 1019(b); *see Martin v. Lancaster Battery Co., Inc.,* 530 Pa. 11, 606 A.2d 444, 448 (1992) (An allegation of fraud must "explain the nature of the claim to the opposing party so as to permit the preparation of a defense," and be "sufficient to convince the court that the averments are not merely subterfuge."). It appears that Moncrief knew of many of the pertinent facts underlying her fraud claim when the foreclosure action began. Her appellate brief asserts that in 2001 she became "concerned about news reports that the builder, the broker, and the appraiser who had been involved in her mortgage were being investigated for mortgage fraud activities," although she did not know that her lender may have been involved. She also noticed an "unexplained jump" in her mortgage payments in 2001. Thus, she

knew as early as 2001 that companies involved in her mortgage were under investigation, and that her payments allegedly inexplicably increased. Although it is unclear whether such a counterclaim could have survived a challenge, it appears as though Moncrief had sufficient information to at least allege that the mortgage was invalid due to fraud.

7. Although Moncrief's complaint is unclear, and she sought to enjoin Judge Wallach Miller from ruling on the ejectment action, it appears as though she is only seeking monetary damages from Judge Wallach Miller for the alleged civil rights claims, as she states that— in respect to all of her claims—she demands a jury trial and seeks "$10,000,000 U.S. dollars in compensatory damages as well as all applicable statutory damages."

other case involving the same piece of property, was not taken in clear absence of her jurisdiction. *See Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("[O]pinions formed by the judge on the basis of ... events occurring in the course of ... prior proceedings [ ] do not constitute a basis for a bias ... motion ... unless they display a deep-seated antagonism that would make fair judgment impossible."). Nor is there a basis for the determination that Judge Wallach Miller acted in clear absence of jurisdiction due to her perceived feelings toward the anti-mortgage fraud group. Finally, even assuming for the sake of argument that Judge Wallach Miller did err in her handling of the foreclosure action, the errors would have been in the course of her judicial duties, and she is immune from suit for such actions. *See Stump*, 435 U.S. at 356–57, 98 S.Ct. 1099.

## V. *Recusal*

■ Additionally, the District Judge did not abuse his discretion denying Moncrief's motion for recusal. *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir.2000) (standard of review). A previous comment by one of the defendants that the judge's wife sparked her interest in the law would not cause a reasonable person to conclude that Judge Munley's impartiality might reasonably be questioned. *See Edelstein v. Wilentz*, 812 F.2d 128, 131 (3d Cir.1987). Nor would it suggest "a deep-seated favoritism or antagonism" by Judge Munley that would preclude fair judgment. *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147.

## VI. *Due Process*

■ Moncrief also claims that the District Court violated her right to due pro-

cess and equal protection by not timely ruling on her motion to enjoin the state court from proceeding in the ejectment action. This claim cannot succeed. While undue delays of court proceedings may constitute a denial of due process, a 54-day turnaround in deciding a motion for an injunction does not constitute a delay, much less an undue delay. *See Madden v. Myers*, 102 F.3d 74, 79 (3d Cir.1996). Accordingly, Moncrief cannot demonstrate that the District Court violated her due process rights. Moreover, even if the District Court had considered the motion prior to the state court's decision in the ejectment action, it likely would have determined that it was prohibited from enjoining the proceedings under the Federal Anti–Injunction Act, 28 U.S.C. § 2283.[8] Thus, any delay in deciding the motion would not have caused an injury to Moncrief (as is required to succeed in a due process claim) as she would not have succeeded in obtaining an injunction against the state court. *See Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir.1989) (listing requirements for due process claims).

## VII. *Conclusion*

For these reasons, we will affirm the judgment of the District Court.

---

**8.** The Anti–Injunction Act is "an absolute prohibition against enjoining State Court proceedings, unless the injunction falls within one of three specifically defined exceptions." *In re Gen. Motors Corp.*, 134 F.3d 133, 144 (3d Cir.1998) (internal citations omitted).